# RUTH A. KENDALL *v.* MICHAEL PILKINGTON
## (SC 16082)

Borden, Norcott, Katz, Vertefeuille and Peck, Js.

Argued March 21—officially released May 23, 2000

*Richard L. Albrecht*, with whom were *Richard G. Kent* and, on the brief, *Vincent M. Marino, Edward Nusbaum* and *Thomas P. Parrino*, for the appellant (defendant).

*C. Michael Budlong*, with whom were *Campbell D. Barrett* and *David S. Allen*, for the appellee (plaintiff).

*Opinion*

KATZ, J. The issue in this certified appeal is whether the Appellate Court properly dismissed the defendant's appeal from various contempt and pendente lite orders based upon his alleged contemptuous conduct. We reverse the judgment of dismissal.

This case has a brief but complicated history.[1] On March 23, 1998, the plaintiff, Ruth A. Kendall, commenced this action for the dissolution of her marriage to the defendant, Michael Pilkington. Although the writ, summons and complaint were served by abode service on March 24, 1998, an order for notice and hearing and a subpoena duces tecum seeking voluminous documents

---

[1] Because the only transcript filed with this court pertains to a July 20, 1998 hearing before *Booth, J.*, on the defendant's motions to vacate certain orders entered against him, our recitation of the facts and procedural history derives from our review of the copious pleadings and undisputed representations of counsel.

for a court appearance on April 3, 1998, were served in hand on the defendant on March 31, 1998. Nevertheless, the defendant, a British national, left the United States and drove to Canada where he boarded a plane for Great Britain, remaining there for approximately five months.

On April 3, 1998, the court, *Sferrazza, J.*, issued a capias with a $5,000,000 cash appearance bond against the defendant for having failed to appear pursuant to the subpoena, and ordered him to pay the plaintiff $50,000 per month alimony pendente lite and $20,000 in counsel fees. The order of counsel fees was without prejudice. Additionally, the trial court granted the plaintiff exclusive use and possession of the family dwelling and entered other orders ancillary to this appeal.

Days later, the plaintiff filed a series of motions, specifically: a motion for contempt for the defendant's failure to comply with the alimony and counsel fees orders; a motion to encumber the marital real property; a motion for a turnover order of tax refunds; and a motion to liquidate the defendant's personal property to satisfy the earlier court orders. On April 20, 1998, the trial court, *Booth, J.*, based upon the defendant's wilful violation of the April 3 orders, granted the plaintiff's motion for contempt, sanctions and counsel fees and awarded her $1000 (first contempt). The court also granted the plaintiff's motion to liquidate the defendant's personal property, her motion for a turnover order of tax refunds and her motion to sell the marital real property, with the money from the sale of the property to be held in escrow.

On May 4, 1998, Judge Booth, acting on motions filed by the plaintiff, entered additional orders, one of which pertained to loan repayment proceeds and another to an award of additional counsel fees of $500 generated in connection with these additional motions. On May

18, 1998, Judge Booth granted the plaintiff's motion for sanctions in the amount of $2000 per day based upon the defendant's failure to comply with the various earlier financial orders. The court also ordered the liquidation of the defendant's securities portfolio in the amount of $100,000, without prejudice, and ordered the payment of counsel fees in the amount of $1000.

On June 15, 1998, in response to the plaintiff's motion for partial release of the funds from the sale of marital real property in which she outlined the alimony arrearage of $140,450, the counsel fees arrearage of $22,500, the costs of the recovery of the defendant's automobile and the $56,000 owed based upon twenty-eight days of sanctions at $2000 per day ($220,565.70 in total), the trial court granted the partial release of funds as requested, "reduced by [the] $58,000 fee."

Thereafter, on July 20, 1998, pursuant to a request by the defendant, Judge Booth reduced the capias to $500,000, but denied the defendant's motion to vacate the contempt order, the monetary sanctions and the counsel fees order of April 20, 1998. The defendant also unsuccessfully requested that the court vacate the alimony and counsel fees ordered on April 3, 1998. The court did, however, reduce the daily sanction amount to $500. Finally, on the same day, the court granted the plaintiff's motion to compel the defendant's compliance with outstanding discovery requests.

On August 6, 1998, the defendant filed an appeal with the Appellate Court from the July 20, 1998 orders. On August 10, 1998, he filed a motion with that court requesting permission to file a late appeal from the April 3 and 20, 1998 orders. That motion was denied on November 18, 1998.

On August 17, 1998, based upon the defendant's failure to pay periodic monthly alimony, the trial court, *Sferrazza, J.,* granted the plaintiff's motion for con-

tempt and imposed counsel fees of $1000 in connection with that motion (second contempt). Additionally, the court granted the plaintiff's motion for release of $111,025 being held in escrow to satisfy the court-ordered monthly alimony and sanctions. On August 24, 1998, the court vacated the $500 daily sanction penalty order of July 20, 1998, effective as of that date.

On September 3, 1998, the trial court, *Kocay, J.*, denied the defendant's motion for a protective order, dated August 5, 1998, regarding the disclosure of information requested in the plaintiff's first set of interrogatories and request for production. On that same date, the court also granted the plaintiff's motion for counsel fees of $2400 to defend the aforementioned appeal of the July 20, 1998 orders.

On September 8, 1998, the court, *Kocay, J.*, granted the plaintiff's motion for contempt for failure to comply with the July 20, 1998 discovery order, and gave the defendant twenty days within which to comply (third contempt).[2] Additionally, the court awarded the plaintiff $3000 in counsel fees in connection with that motion. The court also granted the plaintiff's motion for the additional release of $3500 in escrow funds to satisfy the monetary sanctions that were still outstanding as of August 24, 1998, the date on which the court vacated the daily sanction penalty order. Finally, the court granted the plaintiff's motion for a protective order, staying certain activity in the case until such time as the defendant had complied with the plaintiff's discovery requests.

On September 14, 1998, the defendant filed an amended appeal from the two orders of September 3,

---

[2] The defendant claims that he ultimately purged himself of this contempt by producing the requisite documents within sixty days of September 8, 1998. The defendant relied on this fact as one basis for his opposition to the plaintiff's motion to dismiss the appeal.

1998, and the orders from September 8, 1998, granting the plaintiff's motion for a protective order and motion for contempt.[3] On September 21, 1998, the trial court, *Sferrazza, J.,* vacated the $50,000 weekly alimony order, having "heard evidence . . . [that] casts doubt and uncertainty on the true status and amount of the defendant's trust income." Following motions for articulation filed by both parties, in a revised memorandum dated September 28, 1998, the court clearly stated that no other orders were being vacated and that no sums already disbursed were to be returned. "The order vacat[ing] the alimony order is retroactive to April 3, 1998, however, the plaintiff need not return any sums received but rather the defendant shall be credited with such sums against any [pendente lite] or permanent alimony order issued upon rehearing."

On October 29, 1998, the trial court, *Kocay, J.,* granted the plaintiff's motion for counsel fees in the amount of $25,000, from which the defendant filed an amended appeal on November 12, 1998. Then, on November 23, 1998, Judge Kocay ordered the defendant to pay the plaintiff $4000 per week as alimony pendente lite. The court added that "[a]ll credits for prior payments are deferred until the final awards at trial. This order is retroactive to the date of the initial award." The defendant filed an amended appeal from this order on December 3, 1998.

According to counsel for the defendant, on December 7, 1998, Judge Kocay indicated that he had not intended to create an immediate arrearage owing for the period from April 3, 1998, to September 30, 1998. Nevertheless, the court found that the defendant owed an alimony

---

[3] The file reflects that on September 14, 1998, the trial court again held the defendant in contempt and ordered him to turn over his passport to the court. On that date, the defendant filed an appeal from that order. All subsequent pleadings by both parties, however, omit any reference to this order. We therefore treat it as abandoned.

arrearage of $38,857 for the period from October 1, 1998, to that date, ordered that he pay $19,000 by December 17, 1998, found the defendant in contempt for nonpayment of alimony, and awarded $7000 to the plaintiff for attorney's fees (fourth contempt). Finally, the court denied the defendant's motion for a stay of the December 3, 1998 alimony order. The defendant complied by depositing the $19,000 with the plaintiff's counsel, and on December 15, 1998, the defendant filed an amended appeal from the orders of December 7, 1998. All together, the defendant filed one appeal, which he amended four times, incorporating the aforementioned challenges.

On December 11, 1998, the plaintiff filed a motion to dismiss the defendant's appeal on the basis that the defendant had not complied with the trial court's order of November 23, 1998, nor purged himself of the contempt order of December 7, 1998, at which time it was determined that there was an alimony arrearage from October 1 through December 7, 1998, of $38,857.14. Citing to the lengthy procedural history of the case and the three other occasions on which the defendant had been held in contempt by the court, the plaintiff argued that the defendant was not entitled to obtain appellate relief because he had failed to comply with the various trial court orders.

On December 24, 1998, the plaintiff filed a second motion to dismiss the defendant's appeal, adding new facts in support of the motion. Specifically, the plaintiff related that, despite being served in hand with the plaintiff's subpoena duces tecum on December 19, 1998, for a scheduled court appearance on December 21, 1998, the defendant failed to appear. His counsel, however, did appear, and reported to the court that the defendant had attempted suicide by ingesting cyanide the previous weekend and that, although he had refused to surrender

a bottle of cyanide to him or the defendant's psychiatrist, the defendant had promised not to kill himself for seven days. The plaintiff alleged that the defendant merely had ignored the subpoena to avoid incarceration.

The defendant objected to the plaintiff's motion to dismiss, asserting various considerations, several of which raise issues underlying this appeal: specifically, that the April 3, 1998 orders had been issued eighteen days prior to the return date of the writ, summons and complaint; that the trial court order of September 28, 1998, vacating the April 3 alimony order, and the November 23, 1998 order, awarding alimony pendente lite, were inconsistent; that on December 7, 1998, in apparent recognition of the inconsistency, the trial court orally recited that, although its orders were retroactive to April 3, 1998, it did not intend to create an immediate alimony obligation for the period from April 3 to September 30, 1998; that resolution of issues pertaining to credits and arrearages for that period would be reserved for the trial court; and that the defendant's alimony obligations became effective October 1, 1998. The defendant also stated that, after receiving notice on December 19, 1998, that his motion for a stay had been denied, he paid the plaintiff $19,000 in satisfaction of the December 7, 1998 order by forwarding that sum to the plaintiff's counsel. Additionally, the defendant pointed out that the orders of September 21 and 28, 1998, effectively vacated the orders underlying the contempts of April 3, 1998, and August 17, 1998. Finally, he asserted that all contempts had been purged via the distribution of escrow funds to the plaintiff as well as by the transfer by wire of $4000 per month between April and October, 1998.

On January 8, 1999, the plaintiff sought permission to respond to the defendant's objection in order to assert that, despite the $19,000 payment on December

19, 1998, there remained a significant alimony arrearage. Thereafter, on January 21, 1999, the defendant sought permission to respond in order to reiterate that although the vacating of the April 3, 1998 order rendered two of the contempt orders inoperative, he had, in any event, purged himself of those orders, and that he also had purged himself of the December 8, 1998 contempt by depositing $19,000 with the plaintiff's counsel. He claimed that he had demonstrated overall a willingness to comply with the court orders. Finally, so as to have the last word, on January 23, 1999, the plaintiff requested permission to file a reply memorandum. Based upon our review of the record, it is apparent that these last motions were not acted upon.

Before the Appellate Court had the opportunity to rule on the plaintiff's motion to dismiss, counsel for the plaintiff advised the court that the trial court had entered new orders on January 29, 1999, not yet available in written form, which likely eliminated the need to act on the motion. The plaintiff wrote to the Appellate Court as follows: "Accordingly, in fairness to [the] Defendant-Appellant, please await receipt of such Orders from the trial court before proceeding with further consideration of [the] Plaintiff-Appell[ee]'s various motions." This request was filed in the Appellate Court on February 3, 1999. Despite this request, the Appellate Court nevertheless dismissed the defendant's appeal on February 10, 1999.[4]

On February 17, 1999, the pertinent trial court order, dated January 21, 1999, was faxed to the Appellate Court. It provided as follows:

---

[4] The plaintiff, in her objection to the defendant's petition for review from the Appellate Court, acknowledged that "[a]s of the date of the Appellate Court's dismissals on February 10, 1999, no written trial court orders had yet been issued concerning the January 29, 1999 trial court proceedings. On information and belief, no written trial court Order (*Kocay, J.*) issued until February 17, 1999, or one (1) week after the dismissals."

"ORDER

"The court orders the following in the above entitled matter:

"1. Motion to Vacate Alimony, Pendente Lite (278): The alimony order for $4000.00 per week shall be vacated. The defendant shall pay alimony of $1000.00 per week to the plaintiff. Said order shall be retroactive to October 23, 1998. The previous contempt order against the defendant shall be vacated.

"2. Plaintiff's Objection to Motion to Vacate Alimony Order, Pendente Lite (282): Overruled.

"3. Plaintiff's Motion to Preclude Testimony of Defendant's Expert Witness, Pendente Lite (280): Overruled.

"4. Plaintiff's Objection to Defendant's Inadequate Disclosure of Expert Witness, Pendente Lite (284): Overruled.

"5. Defendant's Motion for Modification of Alimony, Pendente Lite (279) and Plaintiff's Objection to the Motion for Modification of Alimony, Pendente Lite (281): Both motions shall be continued to March 1, 1999, pending a court-ordered psychological evaluation of the defendant by an independent third party who has not treated either party before. Selection of said person shall be made between the attorneys. If the attorneys are unable to agree, the court will chose a third party from a list submitted by the attorneys. The defendant shall be examined within two weeks. A report to the court of the examination shall be made within four weeks.

"Defendant's counsel shall hold the 400 grams of Potassium Cyanide that the defendant currently has in his possession to discourage another suicide attempt. The defendant shall deliver the Potassium Cyanide to his counsel by Saturday, January 30, 1999, at 10:00 a.m.

"6. Defendant's Motions for Order Regarding Accounting (191) and (261): Granted by agreement of the parties.

"7. Plaintiff's Objection to Defendant's Motion for Accounting (264): Overruled.

"8. Defendant's Motion for Extension of Time, Pendente Lite (258): Granted to March 26, 1999.

"9. Plaintiff's Motion to Compel Defendant to Update Discovery Responses, Pendente Lite (276): Granted. The defendant shall update discovery responses by March 26, 1999.

"10. Plaintiff's Motion to Compel Defendant to Pay Automobile Expenses, Pendente Lite (257): Granted. The payment book shall be delivered from the plaintiff's attorney to the defendant's attorney by agreement of the parties by February 15, 1999. The defendant shall assume all expenses for the automobile. The plaintiff shall return to the defendant two wheel rims, if they can be located by the plaintiff.

"11. Plaintiff's Motion for Release of Special Escrow Account Funds (287): Granted. $4000.00 from the plaintiff's attorney's escrow account shall be released to pay the English financial consultant and English attorney. The plaintiff's request to release the full $6000.00 from the escrow fund was denied. However, if Mr. [Steven] Jackson [the English attorney who, acting for the plaintiff, conducted the depositions of the defendant and his financial advisor in England] provides this court with a written estimate, the court will reconsider the release of additional funds.

"12. Motion for Contempt and to Compel the Restoration of Marital Assets, Pendente Lite (286 and 286.01): The motion to compel the restoration of marital assets, specifically the $90,000.00 retainer to the defendant's

attorney, was denied. The motion for contempt was not addressed.

"13. Plaintiff's Motion for Contempt and Counsel Fees, Pendente Lite (re: Accounting) (274): Granted. A legible, understandable accounting shall be provided by February 26, 1999, and should go through February 26, 1999.

"14. Plaintiff's Motion for Turnover Order, Pendente Lite (re: Defendant's 1997 State and Federal Tax Refunds) (252): Continued to March 1, 1999. Defendant's attorney shall determine if an amended return is needed and shall report back to the court within fifteen days.

"15. Plaintiff's Motion for Contempt for Violation of Automatic Orders (re: No. 7 health insurance) (268): Continued to March 1, 1999. The parties shall attempt to find health insurance paperwork.

"By the Court, (Kocay, J.)"

The defendant then petitioned this court for certification to appeal from the Appellate Court's dismissal of his appeal. We granted the defendant's petition, limited to the following issue: "Did the Appellate Court properly grant the plaintiff's motion to dismiss, which asserted that the defendant was in contempt of court, notwithstanding that the defendant appealed from one of the trial court's findings of contempt, had purged himself of the other findings of contempt and despite the fact that the trial court vacated its last finding of contempt thereby mooting the issues raised in the motion to dismiss?" *Kendall* v. *Pilkington*, 248 Conn. 909, 731 A.2d 307 (1999). We conclude that the Appellate Court abused its discretion in dismissing the defendant's appeal. Accordingly, we reverse the judgment of the

Appellate Court and remand the case to that court for further proceedings.[5]

We begin with a discussion of two principles that govern our resolution of this certified appeal; the first is the authority of a reviewing court to dismiss an appeal based upon the conduct of a litigant; the second is our standard of review in deciding whether that authority was exercised properly. We treat them respectively.

It is well established that a litigant who displays a calculated and continued pattern of contemptuous conduct in defiance of the authority of the courts of this state should not be afforded the opportunity to seek our intercession to disturb an adjudication rendered by the trial court. We will not treat a litigant who displays such defiance to court authority with the deference generally accorded to others. Consequently, on occasion, our appellate courts have "dismissed appeals for contemptuous conduct of an appellant not necessarily related to the merits of the appeal." *Greenwood* v. *Greenwood*, 191 Conn. 309, 313, 464 A.2d 771 (1983); see *Broderick* v. *Broderick*, 20 Conn. App. 145, 146, 565 A.2d 3 (1989); *Croke* v. *Croke*, 4 Conn. App. 663, 665 n.3, 496 A.2d 235 (1985); see also Practice Book § 60-2. It has been stated expressly that "[w]hen a party seeks appellate intervention to overturn an adjudication of contempt while simultaneously isolating himself or herself from the consequences of an adverse ruling on appeal or from further orders of the trial court, appellate review may be withheld and the case dismissed unless the appellant demonstrates a willingness to comply with the trial court's order." *Mark* v. *Mark*, 40 Conn. App. 171, 172, 669 A.2d 579 (1995), citing *Greenwood* v. *Greenwood*, supra, 313.

---

[5] For purposes of our review of the Appellate Court's dismissal of the defendant's appeal, we assume that the Appellate Court based its dismissal on the only ground alleged in the plaintiff's motion to dismiss, i.e., that the defendant's conduct demonstrated an abuse of the judicial process.

We consider a number of factors in determining whether an appeal should be dismissed based upon the contemptuous conduct of the appellant. "Some of those factors include the number of times the appellant was held in contempt, whether it is likely the appellant will continue to frustrate any order of the court that may be issued in connection with the same matter, whether the appellant has appeared when summoned to court, and whether the appellant has ever purged himself of the contempt. See *Greenwood* v. *Greenwood*, supra, [191 Conn.] 313; *Broderick* v. *Broderick*, supra, [20 Conn. App.] 146." *Mark* v. *Mark*, supra, 40 Conn. App. 176–77.

In light of this authority, the parties agree that the Appellate Court has discretion to decide that a party, based on a pattern of contemptuous behavior, should not be afforded an opportunity for appellate review. They further agree that the question before us is whether that court abused its discretion in dismissing the defendant's appeal. See *Ramos* v. *Commissioner of Correction*, 248 Conn. 52, 61–63, 727 A.2d 213 (1999).

The plaintiff argues that the defendant's contemptuous conduct fell squarely within the *Greenwood* line of cases. The defendant raises two arguments, inter alia, to support his claim that the Appellate Court abused its discretion. He explicitly recognizes that he might not be entitled to appellate review if he had displayed defiance of court orders and that it is within the Appellate Court's discretion to dismiss his appeal under such circumstances. Nevertheless, the defendant argues that this case does not fall within the category of cases deserving of that treatment.[6] Additionally, the defendant

---

[6] The defendant recites the pertinent history of this case in support of his claim that our holding in *Greenwood* v. *Greenwood*, supra, 191 Conn. 313–14, should not be extended to allow an unconditional dismissal of his appeal because of his conduct. In specific, even before the hearing on January 29, 1999, the trial court, *Sferrazza*, *J.*, on September 21, 1998, had vacated its order of $50,000 per month alimony that had been awarded on April 3, 1998, eighteen days before the return date. Although the court did not vacate the

contends that the Appellate Court acted prematurely and precipitously by proceeding on the plaintiff's motion without the benefit of the trial court's orders of January 21, 1999.[7]

Under the circumstances of this case, we agree with the defendant's secondary claim, namely, that it was an abuse of discretion for the Appellate Court to dismiss the defendant's appeal before receiving a written copy of the court's order of January 29, 1999. We therefore need not decide whether the plaintiff's primary claim has merit.

In dismissing the appeal when it did, despite the *plaintiff's* request to defer acting on her motion to dismiss because a recent decision by the trial court would likely eliminate the need for a ruling, the Appellate Court acted precipitously and prematurely. Had the Appellate Court waited to receive the January 21 order,

contempt orders of April 20, 1998, or August, 17, 1998, it recognized that there would likely be a credit owed to the defendant. Thereafter, on November 23, 1998, the trial court, *Kocay, J.*, set a new alimony award of $4000 per week, and, on December 8, 1998, clarified its earlier statement regarding arrearages, concluding that any arrearage would be calculated retroactive to October 1, 1998. The defendant paid $19,000 on December 21, 1998, as ordered, following the decision by the court denying his motion for a stay. Additionally, there had been several distributions of funds that had been held in escrow, totaling nearly $300,000, as well as monthly transfers by wire of approximately $4000 each month between April, 1998, and October, 1998.

[7] The defendant also suggests that the contempt findings "became void" as a consequence of the trial court decision vacating the earlier $50,000 alimony award. Additionally, he also argues that because he essentially purged himself of the contempt, the contempt order was no longer valid. We disagree. First, the trial court expressly stated that it was *not* vacating any other orders. Second, a finding of contempt is not necessarily vacated because the violator has purged himself. On the contrary, a contempt finding has collateral consequences, even when no longer "active," unless or until it is vacated or rendered invalid. See *Scalo* v. *Mandanici*, 179 Conn. 140, 146–47, 425 A.2d 1272 (1979); *Sgarellino* v. *Hightower*, 13 Conn. App. 591, 594–95, 538 A.2d 1065 (1988). Moreover, as we have stated, even when a trial court improperly holds a party in contempt, that party may not disregard the underlying order. See *Eldridge* v. *Eldridge*, 244 Conn. 523, 527, 710 A.2d 757 (1998).

it would have had the benefit of a trial court decision that, inter alia, modified the plaintiff's alimony to $1000 per week, retroactive to October 23, 1998, vacated the last contempt, and recognized the legitimacy of the claims regarding the defendant's frail mental state that contributed to some of his aberrant behavior. After review of the January 29, 1999 order, the Appellate Court might have found that this case did not involve a party who was likely to continue intentionally to frustrate orders of the court. In its haste to act on the plaintiff's motion, the Appellate Court extinguished the defendant's ability to have a court review trial court orders, including contempt orders, that could plague him for years to come. We conclude, therefore, that the Appellate Court abused its discretion when it dismissed the defendant's appeal.[8]

Although we reverse the judgment of the Appellate Court, we add, however, a note of admonishment. It will be a rare case that does not fall within the broad scope of the discretion conferred upon the Appellate Court. This is such a case.

The judgment is reversed and the case is remanded to the Appellate Court with direction first to decide the plaintiff's motion to dismiss the defendant's appeal on the basis of the entire current record. If the Appellate

[8] The defendant asks this court to decide: whether the Appellate Court, *with the orders from January 29, 1999, in hand,* could properly dismiss the appeal; and whether the trial court acted properly in issuing the various orders that are the subject of the underlying appeal. We decline the invitation. The decisions in the *Greenwood* line of cases were extraordinary because they deprived the parties therein of their right to challenge allegedly improper trial court decisions, leaving in place orders of support, alimony and visitation, significant in and of themselves, as benchmarks for future court orders. Whether this case is worthy of such treatment by a reviewing court is an issue we are more comfortable leaving to the Appellate Court to consider. If the Appellate Court determines that dismissal of the appeal is not appropriate, it will thereafter consider the merits of the underlying appeal.

Court concludes not to dismiss the appeal, that court should then decide the appeal on the merits.

In this opinion the other justices concurred.