CORDELL JOHNSON *v.* WAYNE CLARK
(AC 29338)

Harper, Robinson and West, Js.

Argued October 20, 2008—officially released April 14, 2009

*Marc Darren,* for the appellant (defendant).

*Jane R. Rosenberg,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (plaintiff).

*Opinion*

HARPER, J. The defendant, Wayne Clark, appeals from the judgment of dismissal rendered by the trial court on his appeal from a family support magistrate's order.[1] On appeal, the defendant claims that (1) the court improperly concluded that the family support

---

[1] The attorney general argued this appeal under the authority of General Statutes § 46b-231 (t) on behalf of support enforcement services, which is acting on behalf of the plaintiff, Cordell Johnson. For clarity, all references to the plaintiff in this opinion are to Johnson. All references to the defendant are to Clark.

magistrate did not exceed his authority when he continued the matter of a contempt citation for purposes of monitoring the compliance of the defendant after he paid the purge amount and (2) the family support magistrate improperly disregarded the court's decisional law. We conclude that although the court properly dismissed the defendant's appeal, it should have been dismissed on different grounds. We conclude that the court lacked subject matter jurisdiction over the claim by the plaintiff, Cordell Johnson, because the family support magistrate's decision was not a final judgment. We therefore reverse the judgment and remand the case to the trial court with direction to dismiss the defendant's appeal for lack of subject matter jurisdiction.

The record reveals the following facts and procedural history. The plaintiff and the defendant are the unmarried parents of two minor children.[2] On March 6, 2000, the family support magistrate, *Denise Chisholm Langley*, ordered child support to the plaintiff for the minor children. The plaintiff filed various motions for contempt over the years to attempt to have the defendant comply with the child support order. The defendant accumulated arrearages, owed to both the state and the plaintiff, totaling approximately $17,900 as of May 7, 2007.

On May 9, 2007, the defendant appeared at a contempt[3] hearing, at which the family support magistrate, *John P. McCarthy*, found the defendant to be in contempt for wilfully failing to pay child support. Magistrate McCarthy ordered the defendant to pay his weekly

---

[2] At the time of the present contempt proceeding, the plaintiff was seeking a child support order for a third child, born in 2006, whom she alleged was fathered by the defendant. The third child is not the beneficiary of the support order at issue in this appeal.

[3] The application for contempt was filed on October 31, 2006, requesting the court to issue to the defendant a contempt order, income withholding, a *plan to pay past due support* and an order to participate in work activities.

payments[4] and to remain in the custody of the commissioner of correction until he paid a purge amount of $900, which was the accumulated arrearage that he owed on a prior order.[5] Magistrate McCarthy further ordered the defendant to return to court on June 20, 2007, if he satisfied the purge order, or, in the alternative, on May 16, 2007, if he did not satisfy the purge order. He further stated that if the purge was paid, the purge would be reviewed, nonetheless, on May 16, 2007. On May 16, 2007, the defendant, who had paid the purge amount on May 9, 2007, appeared before the court requesting Magistrate McCarthy to "mark off" the June 20, 2007 date because the purge was paid.[6] Magistrate

---

[4] As of May 9, 2007, the defendant's ordered weekly payments consisted of $117 per week for current child support and $83 per week for the accumulated arrearage owed. On the basis of our review of the record, we understand that the magistrate's order, on May 9, 2007, to pay weekly payments to mean that the defendant was to stay in compliance of paying the arrearage order, which was his past due support. See footnote 6.

[5] During the May 9, 2007 contempt hearing, support enforcement services stated to the court the following:

"The [plaintiff's] arrears are $6706.81 as of May 7, 2007. State of Connecticut arrears are $11,205.13 as of May 7, 2007. It was *continued over for compliance* and, also, the petitioner is appearing today on a subpoena. There is—last time at court the defendant had noted that he had paid the [plaintiff] $1000 direct, and that's the reason for the subpoena. The defendant did pay $440 in a lump sum payment today. It still leaves him short $903.29. He is *offering to pay the remaining delinquency off within two weeks plus his weekly payments*." (Emphasis added.)

[6] The following colloquy occurred in the May 16, 2007 proceeding before the family support magistrate:

"[The Plaintiff]: Well, actually, Your Honor, I'm looking—was this date just for a review, if he purged out?

"[The Defendant's Counsel]: Yes.

"[The Plaintiff]: Now, that I'm looking further at this, it looks like it was—today was the review date. Yes.

"[The Defendant's Counsel]: Yes.

"[The Plaintiff]: And further continued to June 20.

"[The Defendant's Counsel]: And at this point in time, Your Honor, my client has been found in contempt. The purge was set, and $900 of that purge has been paid. He has also paid for this week, as well. I have that receipt here. I would ask that based on the case of *Iturrino* v. *Frison*, [Superior Court, judicial district of New London at Norwich, Docket No. FA-99-0117474-S (January 5, 2007) (42 Conn. L. Rptr. 626)], this case be marked off.

McCarthy denied the request and ordered the defendant to return on June 20, 2007, to review the defendant's compliance with his weekly payments, with the proviso that the defendant could be excused by support enforcement services if he was in compliance.

Pursuant to General Statutes § 46b-231 (n),[7] on May 23, 2007, the defendant appealed to the court from Magistrate McCarthy's denial of his request to mark off the June 20, 2007 date. The defendant asserted that Magistrate McCarthy imposed a "continuing purge" order conditioned on the defendant's making weekly payments. The defendant argued that Magistrate McCarthy exceed his authority by such order. Specifically, the defendant cited *Iturrino* v. *Frison*, Superior Court, judicial district of New London at Norwich, Docket No. FA-99-0117474-S (January 5, 2007) (42 Conn. L. Rptr. 626), which held that a family support magistrate exceeds his authority in setting a continuing purge amount that would not purge a past contempt until all future obligations are met.

In a memorandum of decision filed November 2, 2007, the court found that the defendant's facts were not similar to those before the court in *Iturrino* and dismissed the defendant's appeal. Specifically, it concluded that Magistrate McCarthy did not order a

"The Court: Based on?

"[The Defendant's Counsel]: *Iturrino* . . . the case—

"The Court: Right. But it's not precedent. . . . So, I'm going to have him come back. It's excusable. It really isn't.

"[The Defendant's Counsel]: I understand it's on there; we're going to get one over here, too.

"The Court: No, but I got it from the highest authority.

"[The Defendant's Counsel]: Okay.

"The Court: Okay. June 20. Thank you. Pay every week, sir. Okay." See footnote 5.

[7] General Statutes § 46b-231 (n) (1) provides: "A person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section."

"continuing purge" but, instead, had directed the defendant, who still owed past due support payments, to return to the court to monitor his compliance with court orders.[8] It further noted that the legal issue of whether the family support magistrate had the authority to order the defendant to return, after he had paid a purge order, was not before the court. This appeal followed. Additional facts will be set forth as necessary.

We first address the threshold jurisdictional issue of whether the family support magistrate's decision was a final judgment. On February 7, 2008, prior to oral argument, support enforcement services filed a motion to dismiss the appeal that raised the issue of lack of jurisdiction. It contended that the trial court and this court lacked subject matter jurisdiction over the defendant's claims because the order of the family support magistrate that denied the defendant's request to mark off the continuation date was not a final judgment. On February 20, 2008, the defendant filed an objection to the motion to dismiss. On March 26, 2008, this court denied support enforcement services' motion to dismiss on the ground that the trial court's dismissal of the defendant's appeal from the family support magistrate's decision was an appealable final judgment.

The attorney general has raised this issue again in his brief and during oral arguments.[9] We will review

---

[8] See footnote 4.

[9] The attorney general's brief suggests that the issue of whether the family support magistrate's May 16, 2007 decision constituted an appealable final judgment implicates the subject matter jurisdiction of *this court*. We emphasize, however, that this issue implicates the subject matter jurisdiction of *the trial court*, not the subject matter jurisdiction of this court. See *Harvey* v. *Wilcox*, 67 Conn. App. 1, 5, 786 A.2d 533 (2001) ("[t]o determine whether a seemingly interlocutory order of a family support magistrate is nonetheless final for purposes of appeal to *the Superior Court*, this court applies the finality test of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983)" [emphasis added]); *Gemmell* v. *Lee*, 42 Conn. App. 682, 684 n.3, 680 A.2d 346 (1996) ("this court has jurisdiction to determine whether the trial court had subject matter jurisdiction to hear the case").

the attorney general's claim as it relates to the trial court's subject matter jurisdiction. "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time." (Internal quotation marks omitted.) *Embalmers' Supply Co.* v. *Giannitti,* 103 Conn. App. 20, 29, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007).

A finding on a motion for contempt is a final judgment subject to review on appeal. See *Potter* v. *Board of Selectmen,* 174 Conn. 195, 196, 384 A.2d 369 (1978) (denial of motion for contempt is final judgment); *Sgarellino* v. *Hightower,* 13 Conn. App. 591, 594–96, 538 A.2d 1065 (1988) (finding of contempt subject to appellate review). The decision on appeal before the trial court, however, was not based on the magistrate's factual findings or legal conclusions that the defendant was in wilful contempt or the magistrate's determinations of the fine or incarceration imposed. Rather, the defendant appealed to the trial court from the magistrate's subsequent decision, one week later, to have the defendant return to court for a subsequent review on his weekly payments.[10] As a result, the magistrate's decision is interlocutory in character, and the parties do not dispute the characterization of the ruling as such. The question before us is whether the form or content of the family support magistrate's May 16, 2007 decision

---

[10] See footnote 4. The gravamen of this appeal, as noted by the court, is whether a contemnor, after satisfying a purge, can be ordered to return to court on a future date for the purpose of monitoring his compliance, such that if the contemnor is not in compliance at that future date, the court has the ability to exercise its contempt powers without further process. The defendant is appealing from the family support magistrate's decision to have the defendant return to court on a future date, which the defendant characterizes as a "continuing purge" under *Iturrino* v. *Frison,* supra, 42 Conn. L. Rptr. 627.

removed it from the trial court's judicial review by way of appeal.

In determining whether certain interlocutory orders or rulings are final judgments for purposes of appeal, our appellate courts apply the well established *Curcio* test, which provides that "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). In the present case, neither prong of the *Curcio* test is satisfied.

Under the first prong, the magistrate's denial of the defendant's request to mark off a subsequent hearing did not terminate a separate and distinct proceeding. On the contrary, the magistrate never made a determination on whether the defendant was in compliance with the court's order for weekly payments. The defendant argues[11] that he fully complied with the contempt order when he paid the purge amount. The defendant asserts that because the subsequent June 20, 2007 hearing was part of the paid purge order, the magistrate's decision terminated a separate and distinct proceeding. To support his argument, the defendant relies on *Iturrino* v. *Frison*, supra, 42 Conn. L. Rptr. 626, and claims that the magistrate's decision continued the contempt order, which was a final judgment. In *Iturrino*, the court determined that a continuing purge is excessive when the magistrate orders weekly payments as purge amounts. Id., 627. That factual scenario is not present here, especially because Magistrate McCarthy ruled that the purge was paid.

---

[11] Although the defendant did not brief the issue of subject matter jurisdiction, we have relied on his argument as provided in his February 20, 2008 objection to support enforcement services' motion to dismiss the appeal for lack of a final judgment.

Additionally, the contemnor in *Iturrino* essentially was being punished for his past contempt via paying a purge based on future payments. Id. Here, the record reflects that the magistrate ordered the defendant to maintain weekly payments. See footnote 6. Although we agree that a contempt finding is a final judgment, we do not agree that the magistrate's decision to have the defendant return to review his weekly payments was a decision that terminated a separate and distinct proceeding. Our review of the decision reflects that the magistrate ordered a purge, but part of the defendant's purge order entailed him maintaining weekly payments on the arrearage order of what already was owed.[12] See, e.g., *Kendall* v. *Pilkington*, 253 Conn. 264, 278 n.7, 750 A.2d 1090 (2000) ("[A] finding of contempt is not necessarily vacated because the violator has purged himself. On the contrary, a contempt finding has collateral consequences, even when no longer 'active,' unless or until it is vacated or rendered invalid."); *Monsam* v. *Dearington*, 82 Conn. App. 451, 456–57, 844 A.2d 927 (2004) ("[a]fter a finding of civil contempt, the court retains jurisdiction to vacate the finding or to give the contemnor the opportunity to purge the contempt by later compliance with a court order"). The magistrate's decision to continue a review of the defendant's compliance falls short of being conclusive in nature.

Under the second prong of *Curcio*, the magistrate's denial of the defendant's request to mark off a subsequent review did not so conclude the defendant's rights such that further proceedings could not affect them. "In applying this prong of the *Curcio* test, our focus is on whether appellate review is necessary [in order] to

---

[12] General Statutes § 46b-231 (m) (7) expressly provides for the magistrate to "make such orders as are provided by law to enforce a support obligation . . . ." See, e.g., *Board of Education* v. *Shelton Education Assn.*, 173 Conn. 81, 83, 376 A.2d 1080 (1977) (court ordered nonmonetary purge of incarceration).

prevent the irreparable loss of a cognizable legal right. . . . An essential predicate to the applicability of this prong is the identification of jeopardy to [either] a statutory or constitutional right that the interlocutory appeal seeks to vindicate." (Internal quotation marks omitted.) *Rino Gnesi Co.* v. *Sbriglio*, 98 Conn. App. 1, 10, 908 A.2d 1, cert. denied, 280 Conn. 945, 912 A.2d 480 (2006). At oral argument, the defendant argued that the magistrate's decision violated his constitutional rights by threatening him with incarceration that is unwarranted by law. See Conn. Const., art. I, § 9. The defendant asserted that his failure to be in strict compliance would subject him to immediate incarceration. We find this to be a broad assumption and speculative, considering that the defendant has stated in his brief that he was not in strict compliance on several subsequent hearing dates after the May 9, 2007 decision, and he was never incarcerated for such failure to comply.

In support of his argument,[13] the defendant relies on *Berthiaume* v. *Berthiaume*, Superior Court, judicial district of New Haven, Docket No. FA-98-0412981-S (August 11, 2000), which held that a magistrate did not have the authority to continue a contempt order for the purpose of monitoring compliance when the contemnor paid in full the complete arrearage owed. The contemnor in *Berthiaume* had purged himself of any past due obligations. The present case is distinguishable. Here, the defendant still owed on his arrearage. The magistrate's decision to have the defendant return to enforce compliance with past due weekly payments did not adversely affect the defendant's rights because he would have been excused by support enforcement services from appearing before the magistrate had the defendant complied with his weekly payments. As noted previously, the record reflects that prior to the

[13] See footnote 11.

June 20, 2007 hearing, the defendant was not in compliance with his weekly payment obligation. Therefore, the magistrate's decision to review whether the defendant was making his weekly payments did not conclude any of the defendant's rights. Any further review on this issue would be speculative.

For the foregoing reasons, we conclude that the magistrate's May 16, 2007 ruling is not a final judgment. As a result, because the defendant appealed from that ruling, the court should not have ruled on the merits of the appeal but, instead, should have dismissed the appeal for a lack of subject matter jurisdiction.

The form of the judgment is improper, the judgment is reversed and the case is remanded with direction to dismiss the appeal for lack of subject matter jurisdiction.

In this opinion the other judges concurred.